# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT LOWERY | * | |
|    Petitioner | * | |
|        v | * | Civil Action No. DKC-09-1661 |
| NURSE TRAVIS, ET AL. | * | |
|    Respondents | * | |

\*\*\*

## MEMORANDUM OPINION

Procedural History

On June 24, 2009, the Clerk received for filing a 42 U.S.C. § 1983 civil rights complaint submitted by Robert Lowery alleging that medical personnel at the Western Correctional Institution at Cumberland (WCI) were refusing to treat his swollen hand, damaged in a June 13, 2009 altercation with another prisoner. Paper No. 1 at 5. Plaintiff further complained that a correctional officer, subsequently identified as Eugene Lawton, refused to provide him ice for his hand on June 17, 2009. *Id*. Plaintiff claimed that as of June 22, 2009, the date he signed the Complaint, he had received no treatment for his hand, which he believed to be broken. *Id*. at 7. Plaintiff sought transfer out of the Cumberland region "to be examined by a[n] outside doctor…whom [sic] will submit to this Court [his or her] findings and recommendations for medical care." *Id*. at 4.

Currently pending before the court are Defendants' Motions to Dismiss or Motions for Summary Judgment. Paper Nos. 14 & 19. Plaintiff has filed his opposition responses to those motions. Paper Nos. 17 and 22. The case is ready for review. Oral hearing is unnecessary. *See* Local Rule 105.6. (D. Md. 2009). For reasons to follow, Defendants' Motions, treated as motions for summary judgment, shall be granted.

Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not…to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

As a prisoner claiming denial of medical care in violation of the Eighth Amendment, Plaintiff must prove two elements; one objective and one subjective. First, he must satisfy the objective element by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, Plaintiff must then prove the subjective element by showing "deliberate indifference" on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Health care staff are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

Analysis

Plaintiff indicates that on the day of the fight he was taken to a "safe cell" where Defendant Barnhart looked at his swollen hand, opined it might be broken, and ordered an x-ray. Plaintiff complains that Barnhart did not take him to the dispensary to be seen by a physician and did not provide pain medication. Paper No. 1 at 5 and Paper No. 17 at 1. On June 16, 2009, plaintiff received an x-ray and an order that he receive ice for for his swollen hand for two days. When he showed the paperwork to defendants Gaughen and Lawton, neither took the time to provide the ice. Paper No. 22 at 1-2. Plaintiff states that while his x-ray was interpreted on June 18, revealing a fracture, he was not told the result until June 25, at which time Physicians Assistant Beverly Sparks applied a splint, prescribed ibuprofen for pain, requested a follow-up x-ray, and prepared a written request so that he could be given ice for several days to alleviate pain and swelling. Paper No. 17 at 1-2.

On June 26, 2009, Plaintiff states he prepared another sick call slip, requesting examination by a hand specialist and a different pain medication that would not upset his stomach. On July 1, he was seen by Sparks, who said he needed another type of brace and prescribed Ultram, a different pain medication. Plaintiff indicates the brace was not provided due to security concerns. An x-ray taken July 7 again revealed the fracture.

On August 7, 2009, Plaintiff was examined by Greg Flury for neck and back pain. Plaintiff told Flury he had not received Ultram. Flury ordered Ultram and a follow-up xray for the hand and provided Robaxin as a muscle relaxant. Plaintiff received another x-ray on August 11. He complains that his hand was never cast, and he received no therapy. Paper No. 22 at 2. He states that as of February, 2010, he still suffered pain, and needed "outside" therapy, transfer to another prison, and $5,000 in compensatory damages. *Id*. at 3.

The medical record provides a somewhat different picture. The day of the injury, June 13, 2009, Plaintiff was taken to the medical dispensary after complaining of pain in the right hand. Licensed Practical Nurse Ryan Browning[1] examined Plaintiff and noted the hand was swollen and red, and the ring finger was bruised and depressed, or sunken in relation to the other fingers surrounding it. An x-ray was ordered and Plaintiff was given an ice bag to decrease the swelling. Plaintiff was told to return to the dispensary if the pain worsened. Paper No. 14, Exhibit A, Para. 3. An x-ray taken on June 16, 2009, and interpreted by a radiologist two days later, revealed a fracture of the head of the right ring finger, which is where the finger meets the knuckle of the hand.[2] Dr. Colin Ottey reviewed the x-ray results on June 19, 2009. *Id*., Exhibit A, para. 4.

Plaintiff wrote several sick call slips complaining of swelling and pain and indicating he did not receive his pain medication. The slips were not received by medical personnel until June

---

[1] Although Plaintiff named Defendant Barnhart as the individual who initially examined him, it appears that another male nurse examined Plaintiff on June 13, 2009. Paper No. 14, Exhibit E, pp. 1-2 and 4 and Exhibit C, Para. 3. Barnhart denies under oath any conversation with Plaintiff on June 18 during which he refused Plaintiff ice and told Plaintiff he only wanted ice for a "cold drink." *Id.,* Exhibit C, Para. 4. Similarly, Nurse Baker does not recall a June 16, 2009, conversation with Plaintiff concerning ice or pain medication. *Id*., Exhibit B, Para. 3.

[2] Neither Certified Medication Aide Gaughan nor Correctional Officer Lawson recall a conversation with Plaintiff on July 16, 2009. Both aver that Plaintiff did not ask them for ice or pain medication that day. Paper No. 14, Exhibit D, Para. 5 and Paper No. 19, Exhibit 1 at 2. Officer Lawson indicates Plaintiff asked him and Gaughan for ice on July 17. Lawson denied the request because Plaintiff could not produce the paperwork ordering ice. When Plaintiff produced paperwork later that week showing he was to be given ice, Lawson avers he provided same. Paper No. 19, Exhibit 1 at 2.

24, 2009. Plaintiff was seen in the medical dispensary by P.A. Sparks on June 25, 2009. Plaintiff told Sparks the hand still hurt but the swelling had decreased. Sparks informed Plaintiff of the x-ray result, applied a brace to the fracture site, ordered that Plaintiff receive ice twice a day for two days, and ordered ibuprofen for pain as needed. Sparks also ordered another x-ray to monitor the healing process. *Id.*, Para. 7-8.

The following day, medical staff received a sick call slip wherein Plaintiff requested consultation with a "hand therapist" to get "proper treatment" for his injury, including "surgery if needed" and therapy. Sparks noted that Plaintiff would be scheduled to see Dr. Ottey for further evaluation, and also ordered that Plaintiff be cuffed in front for two months until the finger healed. *Id.*, Para. 9.

On July 1, 2009, medical staff received a sick call slip from Plaintiff indicating the ibuprofen he had been given upset his stomach. He was seen that day by Dr. Ottey, who noted Plaintiff had minimal pain and did not have numbness or tingling in the finger. Examination revealed no swelling, bruising or deformity of the fracture site, with intact nerves and blood vessels. Dr. Ottey discontinued ibuprofen and prescribed Ultram, a narcotic-like pain medication, to be taken "as needed."[3] Because Ultram is a non-formulary medication not routinely stocked in the prison dispensary, a request form was submitted to the regional director of Correctional Medical Services, Inc. (CMS) for approval. Dr. Ottey admits the request was not processed immediately. Paper No. 14, Exhibit A, Para. 12. It appears a second request for Ultram, submitted by PA Flury on August 7, 2009, was finally approved and processed, allowing the drug to be given for one month. *Id.*, Para. 15. Barnhart avers that Plaintiff never

---

3 Defendant Barnhart avers that he provided Plaintiff with 120 tablets of ibuprofen on June 26, 2009, to keep in his cell and take as needed. Paper No. 14, Exhibit C, Para. 5. Medications taken on an "as needed" basis require the prisoner to come to the medical dispensary. *Id.*, Para. 11.

5

requested Ultram during the time Barnhart was on Lowery's housing unit. Paper No. 14, Exhibit C, Para. 5.

Dr. Ottey did not change the brace for the fracture due to security restrictions in Plaintiff's housing unit. He did, however, release Plaintiff from kitchen duty and work and yard activity, and advised him to avoid weight lifting. The July 7, 2009 x-ray showed early callous formation at the fracture site, indicating the fracture had begun to heal. Paper No. 14, Exhibit A, Paras. 13-14.

PA Flury's August 7, 2009 examination focused on Plaintiff's complaints of neck and back pain, for which Robaxin, a muscle relaxer, was prescribed. An August 11, 2009 x-ray shows the fracture continued to heal. Paper No. 14, Exhibit A, Para. 15.

Plaintiff reported continuing hand pain in a sick call slip received by the medical unit on September 3, 2009. *Id*., Exhibit A, Para. 16. PA Sparks examined Plaintiff on October 5, 2009, and observed no distress. Plaintiff claimed his hand still hurt and requested physical therapy to help with range of motion. Sparks, however, noted a full range of motion, no abnormalities, no swelling, and no redness of the hand, and found no medical necessity for Plaintiff to receive physical therapy at that time. *Id*., Exhibit A, Para. 17.

Based upon the documented evidence presented to Court, the undersigned finds that Plaintiff received adequate treatment for his serious medical need, a broken finger. Repeated x-rays show the break was healing. Range of motion was not impaired, thus obviating the need for surgery and/or physical therapy. Further, Plaintiff's complaints were not ignored to a constitutional degree. He was repeatedly seen by medical staff, including a physician, received a splint and x-rays, and was educated about his condition. The record does not support his claim that one or more of the Defendants refused without justification to provide him ice on one or

more days following the injury. Even if this in fact occurred, the record does not show how the lack of ice resulted in complications or impeded healing of what appears to be a simple fracture. Furthermore, the record revealed that he was given a large supply of ibuprofen for pain soon after the injury. While a delay in ordering Ultram, a stronger medication, did occur, the record supports Defendants' claim that Plaintiff never requested the drug once it became available in the dispensary. Plaintiff's claim in February of 2010 that he continued to suffer pain is not persuasive given his apparent disinterest in availing himself of the non-formula pain medication specially ordered for him.

Plaintiff has failed to come forward with opposition materials refuting Defendants' affirmations. His dissatisfaction with treatment amounts to nothing more than a disagreement between medical staff and an inmate as to a course of treatment, and does not rise to a constitutional injury. *See Davis v. Greene*, 2009 WL 3064106, at *13 (S.D. W.Va. Sept. 18, 2009). Given the objective findings regarding Plaintiff's injury and the conservative and measured response by medical personnel to his subjective complaints of pain, Plaintiff has failed to show a genuine issue of material fact as to his entitlement to relief. Accordingly, Defendants' motions for summary judgment will be granted. A separate Order follows.

Date: July 1, 2010            _____/s/_____
                                              DEBORAH K. CHASANOW
                                              United States District Judge